Filed 3/7/16  P. v. Andrade CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C075273 |
| v. | (Super. Ct. No. 62116876A) |
| RAY JOSEPH ANDRADE, | |
| Defendant and Appellant. | |

After the denial of his motion to suppress evidence, a jury convicted defendant Ray Joseph Andrade on one count of cultivation of marijuana.  The trial court sentenced him to three years in county jail.

Defendant now contends the trial court erred in denying his motion to suppress evidence.  He argues he was unlawfully detained and his statements and the diagram found in his vehicle were fruit of the poisonous tree.

We conclude defendant was lawfully detained and the trial court did not err in denying his motion to suppress evidence.  We will affirm the judgment.

1

BACKGROUND

Defendant's motion to suppress evidence was heard concurrently with the preliminary hearing. The magistrate denied the motion and held defendant to answer. Defendant renewed his suppression motion in the trial court and no additional evidence was presented. The trial court denied defendant's renewed suppression motion. The facts are taken from the preliminary hearing transcript.

Roseville Police Narcotics Detective Andrew Palmore testified as an expert in the use and possession for sale of marijuana and methamphetamine. He had worked on numerous drug cases, including marijuana cases, had trained others in marijuana investigations, conducted research about marijuana, and had previously testified as an expert on marijuana use and sales.

In September 2012, Detective Palmore, acting undercover, smelled a strong odor of unburned marijuana. He was standing in front of 524 Sixth Street and he believed the smell was coming from the backyard of the residence. The detective explained: "So [the smell] was strongest just standing in front of 524 6th Street. So what I did was walked about a house or two to the -- to the west of 524 6th Street. The wind that day was blowing in a south direction. So from the -- this house is on the north side of the street. The house -- the wind was blowing basically past the house to my location. [¶] So I walked up the street maybe a house or two down, and I didn't really smell anything. As I walked east towards 524 6th Street, the smell got stronger and stronger. And as I stood in front of 524 6th Street, it was the strongest. And the wind wasn't constant, so I took -- stopped and waited for the wind, and in front of 524 6th Street, it was the strongest. As I passed 524 6th, it got weaker." He admitted that he could not tell the difference between the smell of growing marijuana and a bag of marijuana but the smell was "overwhelming," leading the detective to believe "it was probably a grow."

A storage facility was located behind the residence. Detective Palmore went to the storage facility, spoke with an employee at the front counter, and learned that other

2

employees at the facility regularly smelled marijuana. The employee took the detective to a location at the facility where the smell was the strongest. That location was directly behind the residence at 524 Sixth Street. The employee said other employees told her they climbed up on the roof of the facility and observed marijuana growing in the backyard of the residence.

Four to six undercover officers, including Detective Palmore, began watching the residence in four to six vehicles. The residence had two paved driveways to the left of the residence, a barn offset behind the residence, a garage with two roll-up doors to the left of the barn, a fence between the garage and the barn and a wrought iron gate between the residence and the barn.

Defendant drove a black Expedition sport utility vehicle (SUV) into the second driveway and parked it next to the garage in the back area of the property. Detective Palmore believed that the SUV parked in a location in the back where a resident, rather than a visitor, would park. As defendant got out of the SUV, Detective Palmore parked his unmarked vehicle in a location blocking defendant's SUV so that defendant could not leave. Officer Kanada pulled in next to the detective's car. Detective Palmore had hidden lights and a siren on his vehicle but he did not activate the lights.

Detective Palmore approached the SUV. The detective wore a police tactical vest with a badge on it and "Police" written on the back, a gun on his hip, and a badge on his belt. He introduced himself and asked if there was a marijuana grow in the back of the house. During the contact, Detective Palmore observed that defendant had small fixed pupils, shifty eyes, involuntary finger twitching, jerky body movements, rapid speech, constant lip licking, and a visible neck pulse. Detective Palmore asked defendant if he was a long-term methamphetamine user. Defendant denied being a long-term user but ultimately admitted he had used methamphetamine the previous week. Detective Palmore arrested defendant for being under the influence of a stimulant.

3

When the detective asked whether there was anything illegal in the SUV, defendant told the detective that he could not search it. When the detective said he would search it anyway, defendant said the detective would find methamphetamine in the SUV. Detective Palmore searched the SUV and found a backpack, a digital scale with a vial of gold and methamphetamine residue, a cell phone with a text message asking defendant if he had "a little something," an eighth of an ounce of methamphetamine, and a sketch on a card showing a bunch of circles in an L-shape. Detective Palmore suspected the sketch depicted a marijuana garden. In the backyard of the residence, he found a marijuana grow with 11 small and 11 large marijuana plants, as described in the sketch.

Detective Palmore also spoke with Paula Johnston and Ronald Scott. Johnston said she and defendant shared a room in the residence owned by Scott and that defendant spent his time tending to the marijuana grow. Scott knew about the marijuana plants and said the plants belonged to him and defendant. The detective opined that Scott, who the detective found credible, did not know how the marijuana was grown. Scott claimed he was a " 'hands-off guy.' " Scott stated that defendant grew and cultivated the marijuana and was allowed to stay in the residence for free. Scott claimed that he and defendant sold the surplus marijuana with defendant doing the weighing and selling, noting that the previous year's profit was not much but the current year's would be better. According to the detective, defendant confirmed the profit was not much the previous year but did not speak further about his part. Scott had a medical marijuana recommendation but defendant and Johnston did not. Scott explained that he believed it was legal to sell it. Detective Palmore opined that the marijuana was possessed for sale based on the statements of defendant and Scott and the amount found.

Detective Palmore admitted on cross-examination that he wrote in his report, " 'We detained the driver to find out his involvement with the marijuana smell.' " When asked if he knew or believed prior to contacting defendant that defendant lived at the residence, the detective said he did not know who was driving the SUV when it pulled

4

into the residence.  Detective Palmore did not have a warrant to search the residence and premises for a marijuana grow and never claimed exigent circumstances.

Officer David Buelow interviewed Johnston and Scott.  Johnston claimed that Scott was not involved in the grow, only defendant.  Scott claimed that the marijuana grow belonged to him and presented a medical marijuana card but then claimed he did not actually use marijuana due to work-related reasons.  Officer Buelow opined that Scott did not know a lot about marijuana.

The search of the residence revealed methamphetamine pipes in the closet of the bedroom shared by defendant and Johnston.  Evidence of defendant's, but not Scott's, use of marijuana was also found in the residence.

Defendant testified that when he pulled into the driveway at the residence, Detective Palmore parked his vehicle five or six feet directly behind defendant's SUV, two unmarked vehicles parked behind Detective Palmore's vehicle, and a marked patrol vehicle parked in a separate driveway.  Defendant said he never got out of the SUV before the police contacted him.  When defendant opened the driver's door, Detective Palmore was so close to defendant that he could not get out if he wanted to do so. Defendant did not feel free to leave.  Defendant believed Detective Palmore had activated his red lights on the light bar on his dashboard when he pulled in and parked behind defendant.  Defendant saw four or five officers with guns drawn in addition to Detective Palmore.  Defendant had planned to get out and go into the house.

Defendant sought to suppress any and all observations by law enforcement, any and all evidence, all of defendant's statements, and all other things to have directly resulted from his unlawful detention, search, and seizure.

In ruling on defendant's suppression motion at the preliminary hearing, the magistrate determined that the encounter with the police was not a consensual encounter but instead a detention.  Nevertheless, the magistrate found defendant's detention was justified.  The magistrate said the strong odor of marijuana indicated criminal activity on

5

the property, and defendant's parking spot in the back of the property indicated that he was a resident rather than a visitor. The magistrate found that after the initial detention, the continued detention was justified by the officer's observation that defendant was under the influence.

In denying defendant's renewed motion to suppress, the trial court determined that defendant was detained by officers when the police vehicle blocked defendant's SUV. But based on the strong odor of growing marijuana at the residence, the information that employees of an adjacent business said they had seen marijuana growing in the backyard of the residence, and the defendant's parking spot, the trial court ruled that the temporary detention of defendant was justified by the officer's reasonable suspicion that defendant was involved in the illegal cultivation of marijuana at the residence.

A jury convicted defendant Ray Joseph Andrade of cultivation of marijuana (Health & Saf. Code, § 11358 -- count one)[1] and transportation of methamphetamine (§ 11379, subd. (a) -- count four). The jury acquitted defendant of maintaining a place for selling or using a controlled substance (count three) and possession of methamphetamine for sale (count five). The jury deadlocked on count two (possession of marijuana for sale) and the court declared a mistrial on that count. Count two was later dismissed. Defendant admitted two prior drug-related convictions. (§ 11370.2, subd. (c).)

The trial court sentenced defendant to the upper term of three years on count one and ordered defendant to serve the time in county jail. The court dismissed count four based on a change in the law ("transports" now means "transports for sale") and it dismissed the allegations of the two prior drug-related convictions as no longer applicable.

---

[1] Undesignated statutory references are to the Health and Safety Code.

DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress evidence. He argues he was unlawfully detained because there were no facts adduced at the preliminary hearing connecting him to the marijuana grow, and thus his statements concerning the grow and the sketch found in his SUV were "fruit of the poisonous tree."

We review the magistrate's express and implied factual determinations in the light most favorable to the magistrate's ruling, deferring to the magistrate's findings if they are supported by substantial evidence. (*People v. Williams* (1988) 45 Cal.3d 1268, 1301; *People v. Nonnette* (1990) 221 Cal.App.3d 659, 664; *People v. Trujillo* (1990) 217 Cal.App.3d 1219, 1223-1224.) "In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment." (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

"A detention occurs '[o]nly when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen . . . .' " (*In re Randy G.* (2001) 26 Cal.4th 556, 562.) "A detention is a seizure of the person which is subject to Fourth Amendment protection." (*People v. Viers* (1991) 1 Cal.App.4th 990, 993-994.)

We agree with the magistrate's conclusion that defendant was detained. Detective Palmore positioned his car in a way that blocked defendant's exit from a private residence and, at least one other officer, Officer Kanada, drove in alongside Detective Palmore. This was not a consensual encounter. Defendant was not at liberty to simply ignore the officers' presence and drive away. (*People v. Wilkins* (1986) 186 Cal.App.3d 804, 807, 809.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

7

Here, the detention was reasonable. Detective Palmore smelled a strong odor of marijuana coming from the subject property. He testified as an expert in the use and possession for sale of marijuana, he had worked on numerous drug cases, including marijuana cases, he had trained others in marijuana investigations and conducted research about marijuana, and he had previously testified as an expert on marijuana use and sales. Even without the comments by the employee at the storage facility, which only added to his suspicion, the detective had reason to believe there was criminal activity on the premises.

Defendant drove his SUV down the driveway and parked in the back area of the property. His parking spot on the property suggested that defendant was a resident rather than a visitor. Thus, Detective Palmore pointed to specific articulable facts that, considered in the light of the totality of the circumstances, provided some objective manifestation that defendant may have been involved in criminal activity.

Because the initial detention was justified, and the continued detention was also justified based on the detective's observations that defendant was under the influence, we conclude the trial court did not err in denying the motion to suppress evidence.

DISPOSITION

The judgment is affirmed.

/S/
Mauro, J.

We concur:


/S/
Nicholson, Acting P. J.


/S/
Hoch, J.

8